UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRANDON J. NEIDER, et al.,

Plaintiffs,

-against-

WESTCHESTER COUNTY BOARD OF ELECTIONS, et al.,

Defendants.

**OPINION AND ORDER**

26-CV-04228 (PMH)

PHILIP M. HALPERN, United States District Judge:

Brandon J. Neider ("Neider"), Thomas Keller, in his capacity as Chair of the Mount Vernon Republican Committee ("Keller"), and Carolyn Solieri, Joseph Berger, Sherry Grimes, Patrick Murphy, and Keith Murphy ("Voter Plaintiffs," and together with Neider and Keller, "Plaintiffs") bring this action against Westchester County Board of Elections, Tajian M. Nelson, in her official capacity as Democratic Commissioner, and Douglas A. Colety, in his official capacity as Republican Commissioner ("Defendants"), pressing three claims for relief pursuant to 42 U.S.C. § 1983: 1) procedural due process under the Fourteenth Amendment; 2) equal protection under the Fourteenth Amendment; and 3) ballot access/disproportionate remedy under the First and Fourteenth Amendments. (Doc. 35, "AC").[1] Each of Plaintiffs' claims stem from Defendants' removal of Neider's name from the November 3, 2026 general election ballot for the 89th Assembly District, after an Order was issued by the New York State Supreme Court, County of Westchester, invalidating Neider's designating petition due to a finding of fraud. (*See* AC).

[1] The parties stipulated to dismiss Claims I and II as pressed by Neider only. (Doc. 45). Accordingly, as to the Voter Plaintiffs and Keller, all three claims for relief remain, while as to Neider, only the third claim for relief remains.

The Court previously denied Plaintiff Neider's applications for a temporary restraining order. (Docs. 9, 15). Further, after a hearing held on July 14, 2026, the Court denied Plaintiff Neider's application for a preliminary injunction, granted Plaintiff's request for leave to amend the complaint, and denied, without prejudice to renew, Defendants' request for leave to file a motion to dismiss the complaint. (Docs. 36, 42). Plaintiffs' Amended Complaint added the Voter Plaintiffs and Keller as named parties and otherwise included the same claims for relief as in the original complaint. (*See* AC). Pending presently before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 46). Plaintiffs opposed Defendants' motion (Doc. 48), and the motion was fully submitted with the filing of Defendants' reply (Doc. 47).

For the reasons set forth below, Defendants' motion to dismiss is GRANTED pursuant to Rule 12(b)(1). Because the Court "lacks the power to adjudicate the merits of the case," it will not address Defendants' motion pursuant to Rule 12(b)(6). *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016).

## BACKGROUND

Given the previous adjudication of Plaintiff Neider's applications for a temporary restraining order and a preliminary injunction, the Court assumes the parties' familiarity of the facts and recites them herein only to the extent necessary to decide the motion.

Plaintiff Neider, on or about March 31, 2026, filed a petition with Defendants seeking designation as a Republican Party candidate for Member of the New York State Assembly from

the 89th Assembly District (the "Designating Petition"). (AC ¶ 29; Doc. 46-3 at 2).[2] Prior to the Defendants issuing a determination on the Designating Petition, non-party Serapher Conn-Halevi ("Conn-Halevi") filed an objection to the Designating Petition. (AC ¶¶ 19-21). Defendants, on April 17, 2026, issued a letter to Conn-Halevi, reflecting that they sustained 38 objections, declined to rule on certain objections concerning fraud, and ultimately validated the Designating Petition. Defendants determined that Neider procured 494 total valid signatures, an amount in excess of the required 340 signatures. (Doc. 46-2). Subsequently, Conn-Halevi and another third-party, J. Gary Pretlow ("Pretlow") (together, "Petitioners"), filed an action in New York State Supreme Court, County of Westchester, seeking to invalidate the Designating Petition on multiple grounds, including fraud. (AC at 9-11).

The Hon. William J. Giacomo ("Judge Giacomo"), upon briefing and holding multiple days of hearings, issued a Decision & Order on April 28, 2026, which, *inter alia*, held that Neider "engaged in fraud" as a "subscribing witness" in procuring signatures for the Designating Petition; and thus invalidated the Designating Petition in full. (*See* Doc. 46-3). Judge Giacomo, in granting the Petitioner's requested relief, and in the same Decision & Order, "directed" Defendant Westchester County Board of Elections "to remove Brandon Neider's name from the ballot." (*Id.* at 7).

Plaintiff Neider appealed Judge Giacomo's Decision & Order to the Appellate Division, Second Department, which affirmed on May 13, 2026. (Doc. 46-4). The Court of Appeals, on May 19, 2026, denied Neider's subsequent motion for leave to further appeal. (Doc. 46-5).

---

[2] The Court, in deciding Defendants' Rule 12(b)(1) motion, "may refer to evidence outside the pleadings," including "affidavits and other materials beyond the pleadings to resolve the jurisdictional issue." *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Thus, the Court considers the affidavit of Francesca L. Mountain (Doc. 46-1) and associated exhibits (Docs. 46-2, 46-3, 46-4, 46-5, 46-6, 46-7), in determining Defendants' Rule 12(b)(1) motion.

This litigation followed. Plaintiffs claim various constitutional injuries stemming from Defendants' alleged "enforce[ment] of the Ballot Exclusion through their administration of the November 3, 2026 General Election Ballot." Based upon the pleadings and documents provided to the Court on this motion, the General Election Ballot continues to exclude Plaintiff Neider as a candidate. (AC at 12-16).

**STANDARD OF REVIEW**

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).[3] "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a Rule 12(b)(1) motion, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id.* (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019). "Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

## ANALYSIS

Defendants argue that the *Rooker-Feldman* doctrine bars Neider's remaining ballot access/disproportionate remedy claim, and that the Voter Plaintiffs and Keller lack standing to pursue any of their claims under Article III of the U.S. Constitution. (Doc. 46-8 at 4-9). Plaintiffs counter, arguing first that *Rooker-Feldman* does not serve as a bar to Neider's remaining claim, and as to the remaining Plaintiffs, that the "injury-in-fact" requirements of Article III are satisfied because the Voter Plaintiffs and Keller were burdened as a result of the alleged "[b]allot [e]xclusion." (Doc. 48 at 2-8). The Court agrees with Defendants.

### I. *Rooker Feldman* Doctrine

"As *Rooker-Feldman* goes to subject matter jurisdiction, it must be addressed first before the other issues raised" in Defendants' motion to dismiss. *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 641 (2d Cir. 2021) (citing *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007)). The *Rooker-Feldman* doctrine "bars federal district courts from hearing cases that in effect are appeals from state court judgments." *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021). For *Rooker-Feldman* to apply, "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Id.* (citing *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). Thus, the *Rooker-Feldman* doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

As there is no dispute that the first and fourth procedural requirements of the *Rooker-Feldman* doctrine are met here (Doc. 48 at 3 ("[t]he first and fourth requirements are not disputed as to Neider")), the Court focuses its analysis on the second and third requirements. The second prong—causation—is considered the "core requirement." *See Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018). The third concerns whether Plaintiff ultimately seeks a review and rejection of the State Court judgment. *See Dorce*, 2 F.4th at 101.

First, with respect to causation, a "state court judgment causes the alleged injury for *Rooker-Feldman* purposes only when it 'produces' – rather than 'simply ratifies, acquiesces in, or leaves unpunished' – the alleged injury." *Amelio v. Quicken Loans, Inc.*, No. 24-1619, 2026 WL 1876070, at *2 (2d Cir. June 30, 2026) (citing *Hoblock*, 422 F.3d at 88). Here, despite Neider's assertions otherwise, this case is precisely the type of "federal suit . . . that purport[s] to complain of injury by individuals [but] in reality complain[s] of injury by state-court judgment[ ]." *Hoblock,* 422 F.3d at 88. Neider's attempt to dress up his injuries as being caused only by Defendants fails as Defendants were following the directive of Judge Giacomo when they removed Plaintiff's name from the ballot. (*See* Doc. 46-3 at 7 (Judge Giacomo's April 28, 2026 Order which included the following directive: "the Westchester County Board of Elections is directed to remove Brandon Neider's name from the ballot.")). Thus, Plaintiff improperly seeks to have the "state-court judgment voided paradigmatically," demonstrating that the "relevant injury is the state-court judgment itself." *See Amelio*, 2026 WL 1876070, at *3. Importantly, this is not the situation where the state court judgment simply "ratified" the injury at issue. Instead, Defendants, "left to [their] own devices," and prior to Judge Giacomo's ruling, found that Neider's designating petition was valid. (*See* Doc. 46-2). That earlier validation lends additional support to the argument that Judge

Giacomo's Order "produced" rather than "ratified" the Defendants' removal of Neider's name from the ballot. *See Hoblock*, 422 F.3d at 89.

To the extent Neider claims to press new, allegedly "independent" constitutional claims under 42 U.S.C. § 1983, this argument does not change the injury of which he complains and does not save his claim. Judge Giacomo's Order caused the injuries at issue, *i.e.*, invalidation of Neider's designating petition and his name being removed from the ballot, and Neider may not escape this fact by simply "relying on a legal theory not raised in state court." *Hoblock*, 422 F.3d at 86.

Neider's claim for relief fares no better upon application of the third requirement of the *Rooker-Feldman* doctrine. This element requires the Court to assess whether Neider "invite[s] review and rejection of" the state court judgment allegedly at issue. *Hoblock*, 422 F.3d at 85. Neider claims that the Amended Complaint "expressly disclaims any request for reversal, vacatur, modification, or nullification of the state-court judgment and expressly disclaims any contention that the state courts incorrectly interpreted New York Election law," arguing instead, that the third claim for relief "challenges the constitutionality of the substantive ballot-exclusion consequence presently being imposed upon the November 2026 General Election." (Doc. 48 at 7; *see also* AC ¶ 25). Despite Neider's attempt to circumvent the *Rooker-Feldman* doctrine through "artful" pleading, it is plain that the "substantive ballot-exclusion consequence," Neider's removal from the ballot, was directly and solely caused by Judge Giacomo's Order, not by any action of the Defendants. This fact is made clearer by Neider's attempted distinction that he "does not challenge the state court's fraud determination; rather, he challenges the constitutionality of Defendants' continuing enforcement of complete ballot exclusion notwithstanding the remaining valid signatures." (Doc. 48 at 4). Judge Giacomo addressed the issue of the alleged "remaining valid signatures," by including the following language in his Opinion and Order: "Where, as here, the

candidate himself, as a subscribing witness, has participated in the fraud, the petition should be invalidated even if there is a sufficient number of valid signatures independent of those fraudulently produced." (Doc. 46-3 at 6). The relief Neider requests would effectively reverse Judge Giacomo's Order and thus constitutes an attack on the judgment dressed in new clothing.

Accordingly, granting the relief Neider seeks as to the third claim for relief would require the Court to step into an appellate role, one expressly reserved for the United States Supreme Court. *See Gribbin v. New York State Unified Ct. Sys.*, 838 F. App'x 646, 647 (2d Cir. 2021) (citing 28 U.S.C. § 1257(a)). Under these circumstances, and as all four requirements of the *Rooker-Feldman* doctrine are met, Defendants' motion to dismiss as to Neider's remaining third claim for relief is granted.

II. Standing

"Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies. This limitation is effectuated through the requirement of standing." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009). "Where a party lacks standing to bring a claim, the court lacks subject matter jurisdiction over such claim." *Zlotnick v. Equifax Info. Servs., LLC*, No. 21-CV-07089, 2022 WL 351996, at *2 (E.D.N.Y. Feb. 3, 2022). Standing, as reiterated by the Supreme Court, requires that:

> a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). In short: "No concrete harm, no standing." *Id.* at 417.

At the motion to dismiss "stage, standing allegations need not be crafted with precise detail, nor must the plaintiff prove the allegations of his injury." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 401-02 (2d Cir. 2015) (quoting *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003)). Rather, to survive a motion to dismiss for lack of subject-matter jurisdiction, a plaintiff need only "allege facts that affirmatively and plausibly suggest that [he] has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011); *see also Franklin v. Whole Foods Mkt. Grp., Inc.*, No. 20-CV-04935, 2022 WL 256460, at *8 (S.D.N.Y. Jan. 26, 2022) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, although the factual allegations must be sufficient to put injury-in-fact into the realm of plausible."). However, the injury still must be "particularized; in other words, it 'must affect the plaintiff in a personal and individual way.'" *Piccolo v. New York City Bd. of Elections*, No. 25-CV-02617, 2025 WL 3043619, at *7 (S.D.N.Y. Oct. 31, 2025); *see also B.B. by Rosenthal v. Hochul*, 166 F.4th 259, 271 (2d Cir. 2026) ("The plaintiff must have a personal stake in the outcome of the controversy" (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009))).

"[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC*, 594 U.S. at 431. Here, Voter Plaintiffs and Keller bring claims for: (1) procedural due process under the Fourteenth Amendment; (2) equal protection under the Fourteenth Amendment; and (3) ballot access/disproportionate remedy under the First and Fourteenth Amendments. (*See* AC at 12-14). Plaintiffs have failed to establish that any of the Voter Plaintiffs or Keller have standing with respect to any of their claims in this action.

Plaintiffs claim, as to the Voter Plaintiffs, that sufficient non-generalized "injury-in-fact" exists because they "reside within the 89th Assembly District and allege that the continuing Ballot

Exclusion removes the sole Republican candidate from the General Election Ballot, thereby burdening their ability to associate politically and to cast an effective ballot for their preferred candidate." (Doc. 48 at 5). However, the fact that the Voter Plaintiffs simply "reside within the 89th Assembly District" and cannot vote for their preferred candidate (Neider) does not sufficiently tip the scales from a "generalized grievance" that is "widely shared" to one that is "particularized." *See Collins v. Merrill*, No. 16-CV-09375, 2016 WL 7176651, at *2 (S.D.N.Y. Dec. 7, 2016) (quoting *Crist v. Comm'n on Presidential Debates*, 262 F.3d 193, 195 (2d Cir. 2001)). The outcome and holding in *Piccolo* is persuasive on this point as well. 2025 WL 3043619, at *7. There, the court held that where "Mr. Piccolo allege[d] that the voters of New York [were] injured because the 'electorate [was] deprived of a genuine choice' – meaning any choice that exclude[d] [Mr. Piccolo]," such an injury was a "quintessential generalized grievance, insufficient to confer standing." *Id.*

Here, despite Plaintiffs' attempts to distinguish *Piccolo* and assertions otherwise, the Voter Plaintiffs' injuries are not, in fact, particularized, as they are "widely shared" with the rest of the electorate residing within the 89th Assembly District. The injury that the Voter Plaintiffs share with each other, the inability to vote for Neider due to his exclusion from the ballot due to a finding of Neider's own fraud by Judge Giacomo, is the same injury shared by any other member of the electorate who is also now "deprived of a genuine choice." *See id.*; *see also Collins*, 2016 WL 7176651, at *2 (holding that injuries that plaintiff "shares with the general voting population," are insufficient to confer standing as any such injuries are not "concrete and particularized."). Such a generalized injury is insufficient to confer Article III Standing upon the Voter Plaintiffs.

This outcome does not change as to Plaintiff Keller, who brings this lawsuit "in his Capacity as Chair of the Mount Vernon Republican Committee." (*See* AC at 1). As an initial

matter, Keller is admittedly not a voter in the 89th Assembly District (Doc. 48 at 7) and therefore any alleged standing as a "voter" fails on its face. *See Crist*, 262 F.3d at 195. Plaintiffs instead appear to allege that Keller, in his capacity as Chair of the Mount Vernon Republican Committee, "suffers an independent and continuing constitutional injury because Defendants' conduct deprives the Republican Party of ballot representation within the 89th Assembly District and substantially burdens the Party's rights of political association guaranteed by the First and Fourteenth Amendments." (AC ¶ 15). Plaintiffs argue that despite "[t]he fact that Keller is not himself a resident voter of the 89th Assembly District," this fact "does not answer the associational injury alleged in his representative capacity." But Plaintiffs fail to provide any additional argument concerning this alleged "associational injury." (*See* Doc. 48 at 7). In any event, Keller's generalized injury that Defendants' "conduct deprives the Republican Party of ballot representation," similar to that of the Voter Plaintiffs, is far too "indefinite" to demonstrate an "injury in fact" and confer standing. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006) (holding that an alleged injury is not sufficiently "concrete and particularized" to confer standing where the injury is simply a "grievance" that may be "suffer[ed] in some indefinite way in common with people generally").[4]

---

[4] Assuming *arguendo* that Plaintiffs properly named Keller as a representative of the Mount Vernon Republican Committee sufficiently to constitute a lawsuit brought on behalf of the members of the committee, which is not clear, it is well settled that associational standing exists only where "its members would otherwise have standing to sue in their own right." *See Young America's Foundation v. Stenger*, No. 20-CV-00822, 2023 WL 3559619, at *14, 22-23 (N.D.N.Y. May 19, 2023) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). Here, as discussed above, Keller does not have standing to sue in his own right, as he is not a voter in the relevant district, and the injury is "indefinite" and "in common with people generally." Even taking this analysis one step further, and assuming *arguendo* that there are other members of this alleged Mount Vernon Republican Committee who are in fact, voters within the 89th Assembly District, these members would likely also fail to plead Article III standing for the same reasons as the Voter Plaintiffs, namely, a lack of a "concrete and particularized" injury. *See Collins*, 2016 WL 7176651, at *2.

Simply put, Voter Plaintiffs' and Keller's failure to plead a concrete harm sufficient to establish standing deprives this Court of jurisdiction over their claims. As the Court previously dismissed the remaining third claim pled by Neider, and in light of the above, the Amended Complaint, therefore, must be dismissed.[5]

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

The Clerk of Court is respectfully directed to terminate the pending motion (Doc. 46) and close the case.

**SO ORDERED:**

Dated: White Plains, New York
October 29, 2026

PHILIP M. HALPERN
United States District Judge

[5] In light of the holding and analysis herein, the Court need not, and does not, reach Defendants' remaining standing arguments or arguments supporting their Rule 12(b)(6) motion.